MAXWELL v. HOLMESVILLE MILL & POWER CO.

In re IOWA–NEBRASKA PUBLIC SERVICE CO.

(Circuit Court of Appeals, Eighth Circuit. March 25, 1916.)

No. 4489.

1. PAYMENT ⬤══18—NOTES OF THIRD PARTY.

The acceptance by an electric power company from its consumer of negotiable notes of a third party, which were not paid when due, for the amount due from the consumer, did not, in the absence of an agreement to that effect, operate as a payment, so as to preclude the power company from exercising its option to terminate the contract for arrears in payment.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 78–85; Dec. Dig. ⬤══18.]

2. ELECTRICITY ⬤══11—ELECTRIC POWER COMPANY—CONTRACT—TERMINATION.

Where a contract to furnish current at certain rates gave the power company the option to terminate the contract if the payments thereunder should become three months in arrears, it was not necessary that the power company turn off the current before it gave notice of exercising its option to terminate the contract.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. ⬤══11.]

3. ELECTRICITY ⬤══11—POWER COMPANY—CONTRACT—TERMINATION—SERVICE OF NOTICE.

A notice of the termination of a contract to furnish electric current, which was directed to the company which originally contracted for the current, but was served on the president and general manager of the company which succeeded to the rights of the contracting company, who was also the president and general manager of the contracting company, was sufficient notice to the succeeding company.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. ⬤══11.]

Carland, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

In the matter of the Iowa-Nebraska Public Service Company, bankrupt. From an order allowing the claim of the Holmesville Mill & Power Company for the balance of an account for electric current, Henry E. Maxwell, as receiver in bankruptcy, appeals. Affirmed.

Edgar M. Morsman, Jr., of Omaha, Neb., for appellant.

Hazlett & Jack, of Beatrice, Neb., for appellee.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. This is an appeal from an order allowing the claim of $69.72, the balance of an account for 69,725 kilowatt hours of electric current furnished by the Holmesville Mill & Power Company to Henry E. Maxwell, receiver in bankruptcy of the estate of the Iowa-Nebraska Public Service Company, during the month of October, 1913. The parties agreed that the current was furnished and that the reasonable value of this current was 1.1 cents per hour. Maxwell claims that the current was furnished and re

ceived under a written contract which fixed its price at 1 cent per kilowatt hour, and it is conceded that he has paid that amount. The Power Company insists that the contract under which Maxwell claims had been forfeited and was not in force when the current was furnished, so that it was entitled to recover the reasonable value of the current, which is conceded to have been $69.72 more than the price fixed in the contract.

The real question, therefore, is whether or not the contract was in force in October, 1913. It was made in July, 1910, between the Power Company and the Electric Service Company, a corporation, and it provided that it should continue in force until November 1, 1915, that it should be binding upon the parties to it, their successors and assigns, that the Electric Company should remain liable for the payment of the amounts therein agreed to be paid, notwithstanding any sale or assignment thereof by it, and that in case the Electric Company should become three months in arrears in the payments of the amounts due thereunder the contract might be terminated at the option of the Power Company. On February 19, 1913, the Power Company served a notice upon the Electric Service Company and upon the Iowa-Nebraska Public Service Company to the effect that it canceled the contract because its charges for electric current furnished in June and July, 1911, and in December, 1912, and January, 1913, were unpaid.

[1] As delinquency in payment for the current for 3 months was indispensable to the right of the Power Company to terminate the contract, if there was no delinquency on its part in the payment for the current furnished in June and July, 1911, the attempted termination of the contract was ineffectual. Hence the receiver insists that there was no delinquency in payment for the current furnished during these 2 months. The facts determinative of this claim are that the Power Company on August 17, 1911, accepted for the current furnished by the Electric Service Company in June and July, 1911, the promissory note of the Bullock Public Service Company, a corporation, for $1,-231.97, that the articles of incorporation of the Bullock Public Service Company were amended so as to change its name to the Iowa-Nebraska Public Service Company, that on October 20, 1911, that company first became the owner of the physical properties of the Electric Company and of its contract with the Power Company, that this note was taken up by another note for $1,479.10 on March 7, 1912, that on December 14, 1912, the note for $1,479.10 became due and was taken up by the execution and delivery to the Power Company of two promissory notes made by the Iowa-Nebraska Public Service Company dated December 14, 1912, one for $579.10 and the other for $900, each payable 60 days after their date. The Electric Company was not a party to any of these notes. The Power Company accepted them, discounted them at its bank from time to time, and used the proceeds of the discounts. On February 19, 1913, when the notice of termination of the contract was served the two last notes were due and unpaid, and the bills for the electric current furnished in December, 1912, and January, 1913, also remained unpaid.

It is specified as error that the court below held that the acceptance by the Power Company for the current furnished in June and July,

1911, of the promissory note of the Bullock Public Service Company and the promissory notes of the Iowa-Nebraska Public Service Company did not constitute a payment of the indebtedness of the Electric Service Company for that current. Counsel insist upon argument that the acceptance of a negotiable note of a third party on account of a debtor's liability raises the presumption of a payment of that liability, and they call attention to the fact that there is no evidence in this case whether these promissory notes were accepted in payment of the indebtedness of the Electric Service Company or merely as evidence of security for the indebtedness. But an examination of the decisions has satisfied that the weight of authority is that the taking by a creditor of the negotiable note of a third party for an antecedent debt does not extinguish the debt unless there is an express or an implied agreement that the negotiable note is received as payment. Peter v. Beverly, 35 U. S. 532, 567, 9 L. Ed. 522; Randolph on Commercial Paper, § 1534; Bankers' Trust Co. v. T. A. Gillespie Co., 181 Fed. 448, 456, 457, 104 C. C. A. 196. As the notes had not been paid when the notice was given, and as the bills for the current for the months of December, 1912, and January, 1913, had not been paid, the Service Companies were in arrears more than 3 months, and the Power Company had the option to terminate the contract when it gave its notice.

[2, 3] The next contention of counsel for the appellant is that the contract was not terminated by the notice, because demand for payment and a reasonable time thereafter had not been given, but the evidence satisfies that this contention cannot be sustained upon the record; second, that the termination of the contract could not be affected because the current was not shut off by the Power Company and a refusal to furnish it made before the notice was given, but no reason is perceived to sustain this contention; third, that the notice is directed to the Electric Service Company, not to the Iowa-Nebraska Public Service Company, which at the time and for a year prior thereto had been operating the electric light plant at Beatrice, and had succeeded to the rights of the Electric Service Company, but the notice was served upon the president and general manager of the latter company, who was the same man as the president and general manager of the former company, and it was, in our opinion, sufficient to give the Iowa-Nebraska Public Service Company full notice of its effect; and, fourth, that it was not a bona fide notice, and was never intended to operate as such, because Mr. Bullock, the president and general manager of the Service Company, testified that, when Mr. Steinmeyer served it upon him, he told him that if he was successful in some contest he had with some stockholders of his companies he need pay no attention to the notice, but Mr. Steinmeyer denied this statement, and the court below was not convinced that such a statement was ever made. The notice was sufficient and effective.

Finally it is said that the forfeiture and cancellation of the contract has been waived time and again. The testimony upon this subject is voluminous. It details the actions of the various parties while the electric current has been furnished to the Electric Service Company, to the Iowa-Nebraska Public Service Company, to certain creditors of the Iowa-Nebraska Public Service Company under the contract be-

tween them and the Power Company, and to the receiver in bankruptcy of the Iowa-Nebraska Public Service Company. Suffice it to say that all the testimony upon this subject and all the briefs concerning it have been carefully read and considered, but they have failed to convince that the court below was in error in its conclusion that no waiver had ever been made.

Let the order of the court below, allowing the claim of the Power Company for the sum of $69.72 as an unsecured claim, be affirmed.

CARLAND, Circuit Judge (dissenting). I am unable to concur in the opinion of the court, and will briefly state the reasons for my dissent. The case presents a single question. Was the contract of July, 1910, in force in October, 1913? It was, if not legally forfeited by the action of the board of directors of appellee in passing a resolution to cancel the contract February 18, 1913, and serving notice thereof on the Electric Service Company, February 19, 1913. The reason for the forfeiture as stated in the resolution was that the bills for electric current for the months of June and July, 1911, December, 1912, and January, 1913, had not been paid. The contract was one for the furnishing of electric current at 1 cent per kilowatt hour. It did not specify the time of payment, except as may be inferred from the following language:

"In case party of the first part shall become three months in arrears in the payment of the amounts due hereunder, then this agreement may be terminated at the option of the second party."

It might be inferred from this language that the payments were to be made monthly; but, however this may be, they never were so made.

The case must also be considered with reference to the principle of law that equity never under any circumstances lends its aid to enforce a forfeiture or penalty or anything in the nature of either. Marshall v. Vicksburg, 82 U. S. 146, 21 L. Ed. 121; Livingston v. Tompkins, 4 Johns. Ch. (N. Y.) 415, 8 Am. Dec. 598; 2d Story's Equity, § 1319; Bank v. Dearing, 91 U. S. 35, 23 L. Ed. 196; Jones v. Guaranty Co., 101 U. S. 628, 25 L. Ed. 1030. With this rule of law in view, I am of the opinion that the words "three months in arrears" ought to be construed as meaning 3 "continuous" months. Waiving this contention, however, I am further of the opinion that the appellee waived its right to forfeit the contract for the bills of June and July, 1911. Currents for these months had been furnished 1½ years when the notice of February 19, 1913, was served. A note was given for these bills in August, 1911. In March, 1912, this note was taken up by a new note executed by the Iowa-Nebraska Public Service Company. On December 14, 1912, the note of March 12, 1912, was renewed by two notes maturing February 12, 1913. Conceding that the notes were not payment of the bills, the appellee could not without demand forfeit the contract for the nonpayment of the same. It would seem to be clearly inequitable so to do, especially as the appellee was not the owner of one of the notes at the date of the forfeiture.

In view of the manner that payments were made, a demand was necessary as to the bills of December, 1912, and January, 1913, in order to place the Power Company in default. Tingue v. Patch, 93 Minn. 437, 101 N. W. 792; K. C. E. Co. v. U. P. R. R. Co. (C. C.) 17 Fed. 200; Carpenter v. Wilson, 100 Md. 13, 59 Atl. 186; Cole v. Johnson, 120 Iowa, 667, 94 N. W. 1113.

I think the judgment below should be reversed, and judgment entered for the receiver.